Case number 115-526, Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd. Are the parties ready to proceed? You may proceed. May it please the Court, Your Honor. My name is Kevin Vitrine. I'm here on behalf of Dr. Michael Murphy. He's a DO. I think at one point he was incorrectly noted in the pleadings as an MD. He is the appellant today. We contend that Dr. Murphy is and was entitled to summary judgment under the Good Samaritan Act. And time permitting, I'm going to make four or five main points today. The first one is that the plain and clear language of the act, the Good Samaritan Act, applicable to physicians supports summary judgment in this case. The second point is that the history of numerous cases that predate and are concluded with HEANU, and I may be mispronouncing that, strongly support summary judgment in this case. Number three, that HENSLEY, the case relied upon principally by the plaintiff, is not consistent with the carefully chosen words that the legislature has used in defining the Good Samaritan Act. Number four, that public policy factors are not relevant ultimately to this determination. And number five, that the recent cases, since HENSLEY, do not tacitly support the decision in HENSLEY. So I'd like to start out by talking about the act itself. And I'm not going to read it because it's contained in multiple of the briefs. But 745 ILCS 49-25 starts out by saying, Physicians exemption from civil liability for emergency care. The word emergency care appears twice in the statute. It appears in the section right below where I just read, and then it also appears lower. It is undisputed in this case that Dr. Murphy, at the time of the care and treatment of Mr. Anderson, on August 25th, 2001, was providing emergency care. He was called into a situation where the patient was in extremis and took certain actions, and ultimately there were other physicians who came in as well. I would note that the statute itself does not say that when it relates to emergency care, it does not use the term volunteered at any point in the statute. The word volunteer does not appear in the statute. In fact, there's case law to suggest the Neal case cited in our original motion, and our response in our supplemental brief stand for the proposition that you do not need to be a volunteer. Let me ask you this. Doesn't section 2 of the Act state the legislative purpose as being the General Assembly has established numerous protections for the generous and compassionate acts of its citizens who volunteer their time and talents? So section 2 of the Act does use the word volunteer. Yes. The preamble. My position is the preamble, which is section 2, does include the word volunteer. I was specifically referring to section 25, where I was reading from. So I believe that it is in the preamble, and courts have talked about it, and specifically Neal, in terms of being in the preamble. Is this a preamble, or is it the stated legislative purpose? Is that not what section 2 of the Act describes it as? It's described as a preamble in several of the holdings, and particularly in Neal it talks about it being a preamble. There's other decisions as well that talk about it as being a preamble. How about in the statute itself? What is it labeled? It is labeled the legislative purpose. I agree with Your Honor on that. Thank you. Was the doctor a volunteer when he rendered these services? It would depend on the definition of the word volunteer, but my position would be no, that based on the way that I use the word volunteer, he was not in fact a volunteer. He was an emergency room doctor who was working in the emergency room and was being compensated by his emergency room group, who had a contract with the hospital to provide Solon-exclusive emergency room services. He was called to attend a code, which at times he would do. It depends on who you believe as to how often that would occur, but the code was not in the emergency room. It was on a medical floor. It is not in their contract that they would per se cover codes, but they covered codes when they were available or there was no one else available. If they were attending to a patient in the emergency room, there would be someone else that would cover the code. So I would say he's not a volunteer based on my definition. And so if I go back to the statute, it talks about any person licensed under the Medical Practice Act. Even though Dr. Murphy is a DO, he's still licensed under the Medical Practice Act of 1987, and therefore the act would apply to him provided he meets the other parameters. And then it goes on to talk about a doctor who's licensed under that act, who in good faith provides emergency care without fee to a person, shall not, as a result of his acts or omissions, accept willful or wanton conduct on the part of the person in providing care be liable for civil damages. So the key points there are, again, it reiterates the emergency care aspect. It talks about good faith. And the case law defines good faith as an honest intent not intended to defraud. And I don't think there's any dispute that in terms of the care, the case law has said that the word good faith in the Heano case that I'm going to talk about in a little bit, says that the word good faith modifies both the providing emergency care as well as the without fee portion. And I don't think there's any dispute really on either one of those points, and I'll talk about the billing issue in a moment. And so he provided emergency care, and ultimately the issue comes down, did he do so without a fee? And what constitutes a fee? And my position is that a fee is a service fee between an individual, or in this case a doctor and a patient, to be paid by the patient or someone on the patient's behalf, an insurance carrier or someone else. And that is what constitutes a fee. And I believe that the Heano case is on all fours as it relates to that subject. Let's talk about that for a minute, counsel. Let's assume for purposes of argument that this court finds that the statute is ambiguous, right, and we have to determine the legislative intent. Your opponent seems to draw a line between doctors who volunteer their services and those who are compensated for their services. Right. You, on the other hand, think that the legislature intended to draw a line between those patients who receive a bill and those who don't. Is that fair? Yeah, I agree. Can you explain why you think that is the better interpretation? Well, I believe that that is the interpretation that the Second District came up with and was the case that was directly on point as it relates to the interpretation of the word fee. And I think the traditional connotation of the word fee is different than the word compensation. And, in fact, I'm going to get to it later, but I can foreshadow it now that in the act itself. The question is framed in the terms of legislative intent. Why would that be a better legislative intent than the intent offered by Mr. Ives? Well, I believe that the legislative intent is clear because in other sections of the statute, I believe that Mr. Habeisen is contending that without fee means without fee or without compensation together. That's what I believe his argument boils down to under Hensley. And if you look at other sections, which I'm going to talk about, but I can talk about them right now, the legislature very specifically used the words without compensation in other sections of the act. And they did not use it synonymously without fee. For example, if we look at Section 735 ILCS 49-10, cardiopulmonary resuscitation exemption from civil liability, it talks about not for compensation in there. And then if we look at 49-12, it talks about without fee or compensation, which is the way that they want this statute to read. But clearly the legislature knew the difference in that in other sections within the act, they used the modifier without fee or compensation. And particularly what is most striking is if we look at 745 ILCS 49-35 and 49-40. Those deal with nurses and exemptions for nurses. Now, we're not talking about a nurse in this case, but I think it's instructive to take a look at it because it says in there that nurses are exempt from emergency care when they provide emergency care without a fee in Section 35. It uses the word without fee. And it says that applies to emergency care. But then in Section 40, it gives nursing exemption from civil liability for everything, not only emergency care, for everything if they do so without compensation. So clearly the legislature crafted certain words in the statute because they used them throughout the statute, and at times they used fee, at times they used compensation, at times they used both together, at times they used one or the other. So I think the correct statutory interpretation is to look at the words they used and look at them in the context of the act itself. And therefore, my position is that the correct interpretation is the one of Heanu, which says that it's without fee. And that's the words they selected to use like they used in other sections, and specifically when they were doing it as to nurses, when it was without compensation, they made that an immunity as to everything for a nurse. So obviously compensation is different than a fee, contrary to what Hensley says. And I would also note that Hensley doesn't even talk about any of these sections, and the case that goes on to talk about it is meaningful. So my position is, Your Honor, that the legislative intent has to be derived from the words they use within the context of the act. Is it your contention, counsel, that under the terms of ECHO's contract with Provena, that Dr. Murphy was free to simply ignore calls for emergencies that happened outside of the emergency room? If he wouldn't ignore them, he would be able to, if he was engaged in something else and or some other physician responded, then he would not respond. He might respond and go up and not run the code. If he's engaged, specifically in the contract, it says if he's engaged in something else in the emergency room or some other, or another physician. He wouldn't ignore them. Could he ignore them? I don't believe that he, I don't believe he could ignore them if he was available. And does that impact your argument at all? No, because I don't believe that, I believe that NEEL stands for the proposition that, the statute used to say if you had a preexisting duty that that was critical in terms of the statute, and in 1998, I believe, the statute was amended to take out the term preexisting duty. Wait, wait, wait. Is that what the statute said? I believe that. The statute said, the earlier statute said, without notice. No? My understanding is that the statute said, the earlier statute said emergency without fee and without notice. The legislature took out those words. I don't think they took out the words preexisting duty. I would have to check the exact words. It was discussed in NEEL in the context of a preexisting duty. So I can look in the exact way they said it, because they said the statute was amended in 1998. So Your Honor may be correct that that's the exact words. It was discussed in the NEEL case in the context of a preexisting duty. So at this point, you think that the way the statute is currently written, that the preexisting duty or relationship between the patient and the doctor has nothing to do with the statute. So in other words, if someone has a long-term relationship with a doctor, a crisis occurred, the doctor treats, something happens, the doctor doesn't send a bill, but that doctor is immune. Is that your position? No, because the preexisting duty is relevant to the idea of sending a bill, which is what ultimately what Heano talks about. Heano says that you have to look at that the fee term is defined as a fee from the state, and that the key of a preexisting duty is if you have a preexisting duty, then you look at that can be relevant to why you did not send the bill. Here we know that the bill was not sent because ECHO never sent bills on any codes at all. It was not a nefarious motive that they would just not send a bill because they were trying to avoid liability under the Good Samaritan Act. They never billed on codes in the hospital. That was just the way that ECHO did their practice. Is that because Dr. Murphy would have been compensated from ECHO anyway? Because that's part of his contract with ECHO? It does not matter in Dr. Murphy's contract with ECHO whether or not he attends one code or ten codes as it relates to his compensation, nor does it matter in his compensation whether or not he sees X many patients in the emergency room or X plus 20 or 30. So what's the custom and practice of ECHO? Do they bill at all on any of those codes? They do not bill at all on any of the codes. So my point was that in Heano it talks about that a preexisting duty can be relevant to the issue of determination of why the bill was not sent. So if you normally billed the patient for surrounding circumstances and you just exempted this one particular thing, the court wants to look into that to determine whether or not that's some sort of motive not in good faith and therefore taking them outside the protection of the Act. So it all comes down to good faith? I'm sorry? It all comes down to an analysis of good faith? I believe that it comes down to, number one, you know, obviously is he a physician covered by the Act? Number two, is it an emergency situation? And did he provide care in good faith? And did he not get a fee in terms of good faith? And a lot of the cases post-Heano that the plaintiff or that Mr. Habeisen talks about talk about looking at why they didn't send the bill because that's what Heano talks about. So if you look at Muno and you look at Hernandez and you look at Rodas, all these cases ultimately either say, well, we're sending it back to the trial court to determine whether or not the bill was not sent in good faith. In other words, was the bill not sent because they were trying to get protection of the Act? If this same event had occurred in the emergency room, would the outcome be the same in your analysis? If a bill was sent or not sent? No. If the doctor, there's a code that happened in the emergency room. He's the emergency room doctor. Is he still a good Samaritan?  And they would typically bill for emergency room patients, and therefore he would get a fee. And if they didn't bill, then it would come down to why they didn't bill. Dr. Dana talks about some circumstances as to why they don't bill. So accordingly, I think that's what it would come down to. I think it comes down to is it an emergency situation and did they send a bill and did the care they provide be in good faith and was not sending the bill in good faith? So based on my understanding, if he provided care in the emergency room, ECHO would always bill for those patients. There was a bunch of discovery on that subject, and therefore if he did the bill, he would fall outside the parameters of the Good Samaritan Act. What about the wealthy-poor disparity that I think was brought up at one point? You're saying good faith. I mean, a hospital could have the policy where if someone couldn't pay the bill, poor person who couldn't pay the bill, didn't have insurance, whatever the situation was, and that is their determination as to why not to send a bill. And they say, well, why did you send the bill in this other circumstance? Well, this was a wealthy person with private insurance. We sent the bill. That wasn't necessarily bad faith, but it would set up a disparity where the poor person would not have a right to sue where the wealthy person would, wouldn't it? Well, yeah, that argument is raised in that Law Journal article from the Southern Illinois Law Journal, and I forget the author. I have it here if we need it. But, number one, that theoretical argument has not in any way happened since Heano was decided in 2005. I don't see that as being a real possibility. Number two, I would think that if they just ---- Why wouldn't it be a real possibility? Well, my point, number two, is because if they made an election that we're just not going to bill people who are on Medicare, Medicaid, or whatever version of Obamacare they're on, I mean, I don't know which one would categorize because I don't understand that yet, but if they did that, I think that would go back to the issue of is it bad faith in not billing. So if you say, well, I'm not going to bill everybody because I'm not going to collect it, I mean, I think that that goes back into the equation of bad faith. My point, that's not necessarily bad faith. That could be a business decision, but the impact could be that someone with private insurance and has means would have the ability to sue where the person without means wouldn't have the ability to sue. If your theoretical argument is, in fact, correct, yes, I believe that that's a potential, but I don't think it's happened at all since Heano, so. I have one more question about it. The focus always is on whether or not the patient pays, but the doctor is getting compensated anyway with his contract no matter what he does at the hospital. Correct. Isn't that true? Right. So he is being compensated. He is being compensated. That's correct. Yeah. And that's ultimately, I believe the case comes down to a battle between Hensley and Heano, in that Hensley stands for one proposition and Heano stands for another proposition. And as I alluded to earlier, and I'm going to jump ahead because I'm noticing that I'm short on time, I believe that Heano is the correct statement of the law. It went through most of these theoretical arguments that have been talked about and raised by Mr. Habeisen. It talked about the issue of withholding a bill intentionally and waiting and things of that nature, and I would suggest that their solution was this good faith in terms of not billing, and that was the way that they were going to deal with it. I'd like to just for a couple of minutes talk about Heano. There's a line of cases that come before it, and they all stand for the proposition that the issue turns on whether or not you send a bill, and that's what fee means without fee. And so in terms of Hensley, I guess I'd like to just chat about that for a moment. It's an FSUP opinion. It's out of the federal court, and I believe that the sister court when the first district was looking at the case, the sister court of the second district had already spoken on the subject, and the court elected to follow the decision in Hensley, and I believe that if you look carefully at the statute and the sections that I talked about and the sections that are cited in the brief, Hensley doesn't make any sense. The logic is contorted, first of all, in terms of them saying there's a two-step process. The fee is paid, and the physician is paid. Thank you, Counselor. Your time has expired. Thank you. May it please the Court, good morning. I'm Keith Habeisen. I represent the Applebee's Homestar Bank et al. Could you make sure you speak loudly? Sorry, I've got a little bit of a frog in my throat here. I will. The issue here, obviously, is whether the appellate court should be affirmed or reversed on the summary judgment, and it boils down to, as you've already been discussing here, the interpretation of a statute. Your Honors all know full well that the Supreme Court of Illinois is the ultimate arbiter of that as far as Illinois state law is concerned. What the appellate courts say or what the federal district or circuit court says may be interesting, may be persuasive, it may be irrelevant to you. I might point out that the battle of Hensley v. Hienu that my opponent just mentioned is a battle that was raised in the Muno case in the Second District a long time ago, and there is a definite disparity there in terms of how courts have looked at this. But I think I have a few points I believe I can bear out with. They've been borne out in the briefs, but I believe I'll bear them out here with the time I have to talk to you. One question is, was Dr. Murphy providing emergency care without fee? I believe the answer to that is no. The next question is, is the phrase without fee in the statute ambiguous or unambiguous? And if it is unambiguous, we know we look at the statute as a whole to interpret the legislature's intent without going beyond that. And if it's unambiguous, we go beyond that in this case to the legislative history. I submit that if, in fact, this statute is ambiguous, then the legislative history is crystal clear without any dispute that there was never an intent by the legislature all the way up through the 1998 amendment, which is the last amendment to the statute, to immunize doctors inside a hospital and certainly no intent to immunize doctors who are not volunteers. If the statute is unambiguous, the statute as a whole is clear that someone who is paid for his services is not a volunteer and is not immunized. And either way, Dr. Murphy is not immunized under this act, under these facts. As you're using paid for services, you mean simply because there's a contract and he's employed to provide services at the hospital, no matter what the services are? Correct. And I'll get to that in a moment. I was going to review the facts. I have a specific point I want to emphasize on that. And I would like you to address also, following up on Justice Thomas's question, would this doctor in this situation be able to not go to a code blue, or would that be considered within his contract or within his duties? According to the contract, if he has a higher priority in the emergency room, he could not, he could permissibly not go to the code. But if he had nothing to do in the emergency room, he was required under the contract? Well, not only that, he admitted, he admitted it was part of his job. Does that answer your question? Yes, sir. Thank you. So I want to briefly review the facts to put them in context for what I want to talk about, the unambiguous versus the ambiguous way of looking at this. First of all, Dr. Murphy was an emergency physician. His job was to respond to emergencies, whether they're in the emergency room or whether they're on the floor. A code blue is an emergency. It's an emergency in the ER. It's an emergency on the floor. Responding to code blues in the ER and on the floor was part of his job. Dr. Murphy admitted under oath, responding to them on the floor was part of his job. ECHO had a contract with the hospital to provide what is defined in the contract as services. And that's at the supplemental record 150, 154 to 155, 158. And ECHO was paid an annual fee for providing those services. And that's 157 in the supplemental record. Murphy's contract refers to an hourly service fee. That's what he's being paid. It's called an hourly service fee. The word fee is in both of those contracts. And he was providing those services, supplemental record 168 to 170, 173 and 176 at this time. Also, 170 refers to the hourly service fee. Dr. Murphy, by the way, a volunteer is someone, I think, common definition is someone who does work without getting paid to do it or someone does something he has no obligation or duty to do. Dr. Murphy was not a volunteer. He did not, as the legislature would call it, volunteer his time and talents to help with this hospital. He wasn't engaged in, quote, generous and compassionate acts, unquote. He was being paid to do what he did here. It was part of his job. He was not a good Samaritan. And there's no way the legislature ever contemplated someone like this being covered by the Good Samaritan Act. Let me understand this then. Yes, sir. I think your position is that this was part of his job, emergency services. If his contract or if the contract ECHO had was to put Murphy in the emergency room and do only work in the emergency room and not respond to code blues, is the coverage situation different? Even though he's being compensated all the while he's in ER. If I could change that question just a little bit. If he had not admitted it was part of his job to respond to this code, yes, that would change things. Okay. But that would be a different case. Right. Now, I submit that the phrase without fee must be ambiguous. Why do I say that? Number one, the dictionaries don't agree on that definition. And we cited a case in our brief, Landis, on page 36 of our brief. It's an opinion of this court that says if dictionaries can't agree on a term, that it's ambiguous and you have to go beyond the statute language. The second reason it must be ambiguous is look at the court opinions. We've got the setup here of the Hensley v. Hainu analysis of this where different courts come to different conclusions about what without fee means. Different courts, you know, very educated people, lawyers, come to different conclusions about what that means. So doesn't that necessarily mean it's ambiguous? The last amendment, as I mentioned, in 1998, the legislative history, there was a question asked on the floor as to whether the purpose was to encourage good Samaritans to do the right thing on the streets of Illinois. And the answer was this is exactly the point of the bill. And I submit the legislature never intended, as I said, to protect doctors in hospitals or to protect doctors who are not volunteers under circumstances like this case. And interestingly, there's a couple of cases that pointed out that the Good Samaritan Act, this particular act that was intended to protect doctors, has never been used since 1965 to protect doctors for the original purpose, which was on the streets or outside of a hospital or somewhere else. It's never been applied for that purpose. And the Hensley court pointed out that it appears that the courts have expanded the original intent of this statute to go far beyond what the legislature originally intended. So it's not your position that if a doctor were paid to travel to two or three hospitals and then he encountered an emergency on the street and supplied services, that he would not be a good Samaritan in that situation, even though he's being paid all the while? Are you asking if he's in between the hospitals and he responds to an emergency and he's being paid at that time? He's being paid because he's paid for traveling to and from hospitals and providing services. But he encounters what you might consider is a good Samaritan situation. Is he exempt? I don't have an answer to that one. That's a little trickier question than we're dealing with here, but it's a good question. Well, and the reason I ask these is I'm trying to understand, is it your position that simply because he's being compensated by ECHO, he's automatically not a good Samaritan, or is it because of the scope of the duties that ECHO or he undertook and he admitted to? I actually think that both of those combined in this case take him outside the purview, and each one of those, I'm sorry, with the fact that he is receiving a service fee, and it's called a fee, takes him out of the without fee. That by itself would take him out of the immunization. So the doctor who is traveling from hospital to hospital who is being paid for travel time and whatever, he's being paid a fee. Can he not be a good Samaritan when he comes upon an accident and provides services? I think the answer would depend on more facts, and I'm not trying to avoid your question. The Hensley case actually was very similar to that because that was a doctor who was inside his facility and goes out in the parking lot to try to resuscitate someone. And in that case, because that doctor was being paid per day to take care of patients no matter what, the Hensley court found that he was not immunized under the act. I want to go now to the alternative argument that even if this is not ambiguous, the phrase without fee, that in the classic interpretation of the statute as a whole, and Justice Tice touched on this with her questions earlier, the legislative purpose section, the precedes section 25, is considered part of the statutory interpretation. It is not a preamble, as Mr. Bedreen suggested. It's not called a preamble. It comes after the language, be it enacted, and that's classified statutory construction, and that has to be read when you say read the statute as a whole. And that talks about generous and compassionate acts of citizens who volunteer their time and talents to help others. It talks about people volunteering their time and talents. All it talks about is good Samaritan volunteerism. And then you go to what it says about the doctors, and that's providing emergency care without fee. That clearly manifests the, backing up to where I was before, the legislative history that tells you that's exactly what this was intended, all the way along up through the 1998 amendment. On the face of the statute, if you construe it as a whole, it was not intended to immunize someone who is, A, receiving a fee, and B, is not volunteering his time and talents. He's not doing it out of the goodness of his heart. He's not doing it out of compassion. He's doing it because it's part of his job, as he admitted. I think I only have one more point to make, if there's no further questions, and that is that, and there was a question earlier, I don't remember which justice asked it, but the question was, if this happened in the emergency room, and they don't send a bill, is he immunized? And I guess the answer to that goes to the good faith thing, but I think if you follow the argument of the appellant here, they could, in the emergency room, have a code. Dr. Murphy could, or Echo, because Echo bills for him, could decide not to send the bill because there's a bad outcome, which is what Dr. Dana said, the head of Echo said they might do in some circumstances. And then you get into the debate about whether that was good faith or not. But depending on how that turns out in the court system, yes, that could turn out to be the most absurd result I can imagine. Because you're in the emergency room, where there's emergency room doctors taking care of you, there's a code blue, there's malpractice involved with that, and then a decision is made not to send a bill, and then because of how, you know, you never know how things turn out in a lawsuit, that doctor ends up immunized for something that's part of his job that he's being paid for. And now you take one step back and you have this case. It's part of his job, he's receiving a service fee himself for taking care of this patient, and because of the technicality of a bill wasn't sent to the patient so that Echo got reimbursed for paying Dr. Murphy. Because that's what we're talking about here. The hospital was paying Echo a certain amount of year, and part of that money would go to Murphy. And Murphy's being paid $100, I forget what it was, $125, $140 an hour as a service fee to take care of emergencies. Okay? That's this far removed from the absurd result of it happening in the emergency room, and I suggest this is only slightly less absurd to find that Dr. Murphy would be immunized under these facts. I thank you. If there's no other questions, I appreciate your attention. Thank you, Counsel. Good morning, Justices. May it please the Court. My name is Robert Larson. I'm co-counsel with Mr. Verdreen for Dr. Murphy. In order for this Court to reach the conclusion that Plaintiff's Counsel presents here, it would have to presume that the legislature doesn't know the difference between the words without compensation and without fee. We know Dr. Murphy was being compensated, but if you look at the various provisions of this same statute, the legislature chose in certain circumstances to use the broader term without compensation, and in other circumstances to use the narrower term without fee. They did not do so randomly. When they were saying without fee, it was generally only in the context of emergency care, where the doctor didn't have prior notice of this patient and a prior relationship where they were going to react to something emergently. When they said without compensation, they actually provided broader protection for the physician. For instance, they didn't limit it to emergency care. As counsel noted with nurses, a nurse only has protection against ordinary negligence without fee in an emergency situation. What does that mean, without fee? Why have two sections, one discussing without fee and one without fee or compensation, unless the legislature was intentionally making that distinction between the two situations? Clearly, they intended to do so. Deanna correctly makes that distinction. Hensley wants to wipe it out. And if we talk about absurd results that may come as a result of Hensley or as a result of this disparity, what happens if a doctor does charge a fee and the patient chooses not to pay it? The second half of this fee situation then hasn't occurred. Is now the doctor brought under the ambit of the Good Samaritan Act? Clearly, that would be absurd as well. There has to be a situation where the doctor does not intend to collect a fee. We talked about the obligation of Dr. Murphy under this case, and I think it's important to understand the difference between a volunteer as a generic proposition and the duty of a doctor under the Hippocratic Oath. Doctors have duties that exceed what may be a strictly contractual obligation. In this case, the contract says the following. Physicians shall not provide any general or routine care of patients already hospitalized under the care of another physician. However, in dire emergencies, cardiorespiratory or impending arrest, physician may, not shall, but may render service to any patient as long as there is not an emergency department patient requiring his or her immediate presence and only until the patient's personal physician has assumed ongoing care. That's what the contract between ECHO and the hospital says in this case. Now, based upon longstanding medical tradition and based upon the interaction of the doctors in this hospital, have the physicians of ECHO assumed a moral obligation to attend codes when they're able to do so? Yes, they have. Does that make them a volunteer or not? The statute refers to volunteers, but it clearly, clearly does not limit its coverage to only the generic term volunteers. Why are there sections that deal with free clinics and other sections that deal with doctors in hospital? There are, in fact... Counsel, do Sections 10 and 40, going back to your earlier argument of the Act, state that the providers are immune if they perform without compensation? Section 10 says not for compensation. Section 40 says... Doesn't that impact your argument? Aren't they using fee and compensation interchangeably then? No, I don't think so, Your Honor, because when they use without compensation in those sections, they're applying a different standard to those scenarios. For instance, in 40, yes, they say without compensation, but in that case they are not limiting the protections of the Act to only emergency situations. They're giving a broader protection to a nurse providing any care if they're doing it completely for free without any circumstance. Your Honor, Justice Carman? Yeah, but it's still in line with immunity, right? If providers are immune, maybe they're immune in a different sense or in a broader sense, but aren't they interchanging fee and compensation? You're saying because they're used in a broader sense there, they want to give a greater protection for compensation, and it's not just an interplay of the wording fee and compensation. Is that what you're saying? Absolutely, Your Honor. They chose very specific circumstances where they used the terms without compensation and other very specific circumstances where they said without fee. And there's a logical basis for that. When you're talking about an emergency as opposed to generic care where somebody just decides that they're not being compensated, the obligations, the difficulties, consider what Dr. Murphy was facing here. He's in the emergency room caring for patients. He gets a page, come up to this room. You don't know this patient. You don't know this patient's situation. All you know that this patient is dying, and you've got to do whatever you can to try to save this patient. That's a very different circumstance from somebody providing care at a free clinic. However, the courts have said if you're going to go provide care at a free clinic, we're going to provide even broader protection than a doctor in an emergency situation who doesn't charge a fee. And by the way, the party here is Dr. Murphy. It's not ECHO. Dr. Murphy was going to be, quote, unquote, compensated for his time whether he attended this code or not. If he had another patient that he was caring for at the time, he wouldn't have gone to this code. He still would have gotten the exact same compensation whether he went to the code or not. And ECHO was never going to bill for this code. Yes, there is a distinction if the code were to have taken place in the emergency room because if it was taking place in the emergency room, the emergency room doctor would have been the one caring for the patient at the time the code arose. Here he's being asked to step out of his normal role, go to a different place in the hospital, assume responsibility for a patient that's not his in a life-or-death situation, and act immediately. And counsel wants to impose on him a duty of ordinary negligence. The legislature has rationally chosen to say, no, we're going to give a little time. Mr. Habeisen was asked some hypotheticals. Let me give you one. The emergency in this case is just outside of the emergency room in a hallway, and Dr. Murphy decides to roll him into the emergency room where there's some apparatus there that he needs, whether he has to take a CAT scan, whatever the situation is. Different situation? Is he still under the Good Samaritan law? I think if he's treating the patient in the emergency room, per the contract when he's treating the patient, why he would choose to actually be the person who physically takes somebody into the emergency room, I don't know. That's the great thing about hypotheticals. Certainly, Your Honor. Certainly. But assuming the care takes place in the emergency room where he can attend to his normal duties, the patient's brought to him or they're right outside and he drags them in so he can work within his normal parameters, yes, he's going to be billed for that because that's what the contract says, and that's their normal practice, and then he's not going to fall under the ambit of the Good Samaritan Act. However, he's called away from his normal responsibilities in a situation where they are not and never will be compensated for that care in a much more strenuous and difficult circumstance, the legislature has chosen to extend greater protection to doctors under those circumstances. And, yes, the word volunteer appears in whether it's a preamble or legislative intent, but if that's all the statute meant, all it meant was volunteer, we'd have a much shorter statute. Why get into all these different situations where you say without compensation here? There are even sections of the statute that make a distinction between whether the care without compensation occurs in or outside a hospital. The legislature has chosen in certain circumstances to say we're only going to provide that protection outside of a hospital or we will provide something different in a hospital. They chose their words carefully here. The court may disagree with the public policy choices made by the legislature, but respectfully, those are still the legislature's choices to make unless they absolutely offend fundamental principles of justice as set forth in the Illinois Constitution, and I don't see how that occurs here. There were specific choices made, and I think they were appropriate choices. Counsel mentioned the Muno case, and the Muno case does discuss both Hensley and Piano. It didn't choose between the two of them. They said the arguments were interesting, and certainly there are interesting arguments. I think, and I agree, that the choice of the Federal judge in Hensley relied on some tortured logic to try to separate out the term fee into some sort of a two-step process. When the legislature spoke very clearly and chose the words very clearly, they knew what fee meant. Fee is a clear thing. Dr. Murphy was not going to get a penny more whether he attended this code or not. Dr. Murphy had the discretion, although ordinarily, pursuant to tradition, pursuant to hospital policy, he would ordinarily attend codes if he was available. Had he had something else going on at the time that prevented him from being there, are we saying that he would have violated his duty to this patient by not going there, even though he was caring for another patient in the emergency room? Would that then have been a violation of his responsibilities? No. He did not have an absolute affirmative obligation because he did not have an existing relationship with that patient that required him to be the primary person providing the care. His obligation was to be in the emergency room, and every patient that was in the emergency room was certainly his patient. But the legislature chose to draw a distinction, and I think it's a perfectly rational one to have drawn. Thank you, counsel. Thank you, Honor. Case number 115-526, Homestar Bank and Financial Services v. Emergency Care and Health Organization, is taken under advisement as agenda number eight. Counsel, we thank you for your arguments today. You're excused. Thank you very much, Honor.